UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROMARA HAIRSTON,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

**DECISION AND ORDER**

1:18-CV-00980 EAW

---

## INTRODUCTION

Represented by counsel, Plaintiff Romara Hairston ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 13; Dkt. 14). For the reasons discussed below, Defendant's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 13) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on July 22, 2014, and her application for SSI on July 23, 2014. (Dkt. 9 at 27).[1] In her applications, Plaintiff alleged disability beginning May 1, 2010, due to diabetes, neuropathy, headaches, depression, and suicidal ideation. (*Id.* at 27, 229, 234). Plaintiff's applications were initially denied on September 22, 2014. (*Id.* at 124-39). At Plaintiff's request, a hearing was held on March 13, 2017, in Buffalo, New York, before administrative law judge ("ALJ") William Weir. (*Id.* at 45-78, 140-41). Prior to the hearing, Plaintiff amended her alleged onset date to January 21, 2014. (*Id.* at 27, 227). On June 27, 2017, the ALJ issued an unfavorable decision. (*Id.* at 24-44). Plaintiff requested Appeals Council review; her request was denied on July 26, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2015. (Dkt. 9 at 29). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 21, 2014, the amended alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of diabetes mellitus and carpal tunnel syndrome. (*Id.* at 30). The ALJ further determined that Plaintiff had a number of non-severe impairments, and specifically concluded that Plaintiff's "medically determinable mental impairments, considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities." (*Id.* at 30-31).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 32).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] is able to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. In addition, [Plaintiff] is frequently—but not constantly—able to handle objects.

(*Id.* at 33). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was capable of performing her past relevant work as a bill collector, customer order clerk, and seamstress. (*Id.* at 37).

In the alternative, at step five, the ALJ relied on the VE's testimony to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of warehouse support worker/mailroom clerk. (*Id.* at 38). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the amended alleged onset date through the date of his decision. (*Id.*).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner. (Dkt. 13-1 at 29). Plaintiff contends that: (1) the ALJ erred at step two in finding that Plaintiff did not suffer from a severe mental impairment; (2) new and material evidence warrants remanding this matter pursuant to the sixth sentence of 42 U.S.C. § 405(g); and (3) the Appeals Council erred in failing to consider new evidence submitted by Plaintiff. (*Id.* at 12-29). The Court has considered these arguments and finds them without merit for the reasons set forth below.

### A. The ALJ's Step Two Finding is Supported by Substantial Evidence

Plaintiff first argues that the ALJ erred in determining that Plaintiff's mental impairments were not severe. When evaluating the severity of mental impairments at step two of the five-step sequential evaluation, Social Security Adminstration regulations

require the application of a special technique. *See Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016) (citing *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008)).

"The special technique first requires the ALJ to assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in . . . paragraph B of the adult mental disorders listings. Those four functional areas are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and, adapt or manage oneself." *Cyman v. Berryhill*, No. 17-CV-571-A, 2019 WL 2314617, at *2 (W.D.N.Y. May 31, 2019) (citations, quotations, and alteration omitted). If the ALJ rates the claimant's degrees of functional limitations as "none" or "mild" in each of the four functional areas, he will generally conclude that the claimant's impairments are non-severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."[2] 20 C.F.R. § 404.1520a(d)(1). "[T]he regulations . . . require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision *must* include a specific finding as to the degree of limitation in each of the functional areas. . . ." *Kohler*, 546 F.3d at 260 (quotation omitted).

Here, the ALJ documented his application of the special technique and evaluated Plaintiff's functioning in each of the functional areas. With respect to the first functional area, the ALJ found that Plaintiff had no limitations in understanding, remembering, or

---

[2] Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522.

applying information. (Dkt. 9 at 31). In reaching this conclusion, the ALJ relied upon the opinions of consultative psychiatric examiner Dr. Christine Ransom and reviewing psychological consultant Dr. E. Kamin. (*Id.*). Dr. Ransom examined Plaintiff in September 2014 and observed that she had intact memory, average intellectual functioning, good insight and judgment, and coherent and goal-directed thought processes. (*Id.* at 424-25). Dr. Ransom further indicated that Plaintiff had "mild psychiatric conditions which will not significantly interfere with [Plaintiff's] ability to function on a daily basis." (*Id.* at 425). Dr. Kamin similarly opined that Plaintiff's psychiatric symptoms were "non-severe" and noted that Plaintiff was able to manage her money and follow instructions. (*Id.* at 117). These medical opinions support the ALJ's conclusions regarding Plaintiff's ability to understand, remember, and apply information.

With respect to the second functional area, the ALJ found that Plaintiff had no limitations in interacting with others. (*Id.* at 31). In reaching this conclusion, the ALJ relied on Dr. Kamin's opinion that Plaintiff would have no difficulties in maintaining social functioning. (*Id.*). The ALJ noted that Dr. Ransom had opined that Plaintiff had "mild limitations" in the ability to relate adequately with others, but concluded that this finding was not borne out by the "longitudinal medical evidence in the record" showing that Plaintiff is able to interact appropriately with medical personnel, nor by Plaintiff's self-report that she is able to socialize with family members. (*Id.*).

As to the third functional area, the ALJ concluded that Plaintiff had "mild limitations" in concentrating, persisting, or maintaining pace. (*Id.*). The ALJ noted that Dr. Ransom's examination of Plaintiff had revealed intact attention, concentration, and

memory skills, and that Dr. Ransom had opined that Plaintiff would have only mild limitations in her ability to perform complex tasks. (*Id*. at 32). The ALJ further relied on Dr. Kamin's opinion that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace. (*Id*.).

Finally, with respect to the fourth functional area, the ALJ found that Plaintiff had mild limitations in adapting or managing oneself. (*Id*.). The ALJ again relied on Dr. Ransom's and Dr. Kamin's opinions, noting that Dr. Ransom had opined that Plaintiff had mild limitations in the ability to deal appropriately with stress and that Dr. Kamin had opined that Plaintiff had mild restrictions in her activities of daily living. (*Id*.).

The Court finds that the ALJ appropriately applied the special technique and that his conclusions were supported by substantial evidence. In particular, the ALJ relied on the opinions of Dr. Kamin and Dr. Ransom in finding that Plaintiff's mental impairments were non-severe. It is well-established that "[a] well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may . . . provide substantial evidence supporting an ALJ's decision." *Cassandra K. v. Comm'r of Soc. Sec.*, No. 5:18-CV-86 (ATB), 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019). Moreover, where Dr. Kamin and Dr. Ransom differed in their assessments, the ALJ was within his discretion to resolve the conflict. *See Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 760 (S.D.N.Y. 2018) ("It is within an ALJ's discretion to resolve 'genuine conflicts in the medical evidence.'" (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Plaintiff has not identified any opinion from a qualified medical source contradicting Dr. Ransom's and Dr. Kamin's opinions. Instead, Plaintiff points to her treatment records from Horizons Health Services ("Horizons"), arguing that "[a]n analysis of the 'Paragraph B' criteria in light of the treatment records from Horizons indicates the ALJ was mistaken" in finding that Plaintiff's mental impairments were non-severe. (Dkt. 13-1 at 13). However, the ALJ expressly cited to and considered the Horizons records in making his assessment. (*See* Dkt. 9 at 31 (citing to Horizons records in discussion of Plaintiff's mental health treatment notes)). Plaintiff's disagreement with the ALJ's weighing of the medical evidence is not a basis for remand.

Moreover, the Horizons records do not contain any assessment of Plaintiff's functional limitations. It was not error for the ALJ to rely on the medical opinions of record rather than to engage in his own interpretation of Plaintiff's mental health treatment records from Horizons; to the contrary, "an ALJ is not a doctor, and therefore is not equipped to make medical judgments. . . ." *Indelicato v. Colvin*, No. 13-CV-4553, 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2014).

The Court further notes that the portions of the Horizons records on which Plaintiff relies consist in large part of her own self-reports. (*See e.g.*, Dkt. 13-1 at 14-17 ("Plaintiff reported to her psychiatric nurse practitioner that she had once attempted suicide. . . . [Plaintiff] uncharacteristically recently stole some items from Kmart and she is shocked at herself. . . . [Plaintiff] indicated she avoids men due to past domestic violence . . . [and] finds herself feeling 'disgusted by germs' and not wanting to come in contact with them. . . . [Plaintiff] reported that she isolated herself from others. . . . [Plaintiff] reported [she]

does not like touching surfaces. . . ."). "While a claimant's self-reported symptoms are certainly an essential diagnostic tool, that does not automatically transform them into medical opinion." *Burden v. Astrue*, 588 F. Supp. 2d 269, 276 (D. Conn. 2008). The mental status examinations performed by Plaintiff's providers at Horizons consistently reflected only minor abnormalities, and the ALJ did not err by not placing more weight on Plaintiff's subjective complaints contained in her treatment notes. *See Martes*, 344 F. Supp. 3d at 763 ("[A]n ALJ is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." (quotation omitted)).

The Court also rejects Plaintiff's argument that the ALJ improperly "emphasize[d] [Plaintiff's] lack of consistent mental health treatment." (Dkt. 13-1 at 19). It is true that "courts have observed that faulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a questionable practice." *Rogers v. Berryhill*, No. 16-CV-6349-FPG, 2017 WL 3483666, at *5 (W.D.N.Y. Aug. 15, 2017) (alteration and quotations omitted). However, that is not what the ALJ in this case did. Instead, in summarizing Plaintiff's mental health records, the ALJ noted in a single sentence that Plaintiff's "attendance at treatment was intermittent at times." (Dkt. 9 at 31). There is no indication in the ALJ's decision that he drew any conclusions from Plaintiff's intermittent attendance. Instead, as discussed above, the ALJ relied on the medical opinions of record in assessing Plaintiff's mental impairments. A factually accurate reference to Plaintiff's occasionally intermittent attendance, particularly in the context of summarizing her mental

health records, does not constitute an improper faulting of Plaintiff for failing to seek treatment.

The Court does not dispute that the medical evidence of record is somewhat mixed regarding Plaintiff's mental health, and it may be that the ALJ could have rationally determined, based on the medical evidence of record, that Plaintiff had a severe mental impairment. However, where substantial evidence exists "to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d. 444, 454 (S.D.N.Y. 2008) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). In this case, as discussed above, Dr. Ransom's and Dr. Kamin's opinions, which constitute the only medical opinions of record regarding Plaintiff's mental impairments, constitute substantial evidence for the ALJ's conclusions. The Court finds no basis for remand in the ALJ's step two conclusions.

### B. Remand for Consideration of New and Material Evidence is not Warranted

Plaintiff next argues that the Court should remand this case for consideration by the Commissioner of new and material evidence. "The Social Security Act permits remand for review of new and material evidence pursuant to the sixth sentence of § 205(g), 42 U.S.C. § 405(g), which provides in pertinent part that '[t]he court . . . may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding. . . .'" *Gee v. Colvin*, No. 13-CV-6396 EAW, 2014 WL 4924102, at *11 (W.D.N.Y. Sept. 30, 2014) (quoting *Geracitano v. Callahan*, 979 F. Supp. 952, 958 (W.D.N.Y. 1997)). "In order to justify remand under this provision, the plaintiff must show (1) that the proffered evidence is 'new' and not merely cumulative of what is already in the record, (2) that the evidence is material, *i.e.*, both relevant to the claimant's condition during the time period for which benefits were denied and probative, and (3) good cause for failing to present the evidence earlier." *Geracitano*, 979 F. Supp. at 958.

Here, the "new and material evidence" relied upon by Plaintiff is a March 20, 2019, decision by the Social Security Administration finding that Plaintiff was disabled as of September 14, 2018. (*See* Dkt. 13-1 at 23). However, the Second Circuit has explained that "[t]he mere existence of [a] subsequent decision in [the plaintiff's] favor, standing alone, cannot be evidence that can change the outcome of his prior proceeding. A subsequent favorable decision may be supported by evidence that is new and material under § 405(g), but the decision is not itself new and material evidence." *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (quoting *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)); *see also Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) ("The finding that [the plaintiff] was disabled more than two and a half years after the ALJ's unfavorable decision says little about whether plaintiff was disabled during the time period relevant here, and any inference that can be drawn is too weak to displace the substantial evidence supporting the ALJ's determination." (quotations omitted)). In other words, "the fact that two ALJs may permissibly reach different conclusions . . . is not probative of

anything." *Caron*, 600 F. App'x at 44. Accordingly, Plaintiff's argument that "remand will promote consistency between the two decisions as it will afford the ALJ an opportunity to consider the finding in the second application that [Plaintiff] was disabled" (Dkt. 13-1 at 27) misses the mark. An ALJ is required to consider medical evidence, not the conclusions of another ALJ, and consistency between the two decisions is not required. Moreover, the conclusion that Plaintiff was disabled as of September 2018 (more than a year after the ALJ's decision in this case) does not call into question the validity of the ALJ's determination. The Court does not find remand on this basis warranted.

### C. The Appeals Council did not Commit Error

Plaintiff's final argument is that the Appeals Council erred in failing to consider new evidence submitted to it. The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is a "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting *Pollard*, 377 F.3d at 193)). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her

functioning at some later point in time, need not be considered by the Appeals Council. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999).

In this case, Plaintiff submitted to the Appeals Council a neuropsychological evaluation performed by Dr. Tatyana Raby on May 15, 2018. (Dkt. 7 at 12-15). The Appeals Council found that this evaluation did not relate to the relevant time period. (*Id.* at 6). The Court finds no error in this determination. Dr. Raby's evaluation was expressly based on her examination and testing of Plaintiff (*id.* at 15), which occurred nearly a year after the relevant period expired. Moreover, to the extent Dr. Raby referenced Plaintiff's medical records, they were also records from outside the relevant time period. (*See id.* at 12 (referring to MRI performed in August 2017 and neurological evaluation performed in February 2018)). Nothing in Dr. Raby's assessment suggests that it was meant to be retrospective or to provide insight into Plaintiff's functioning during the relevant time period. To the contrary, Dr. Raby's assessment indicates that it reflects a worsening of Plaintiff's prior condition. (*See id.* (noting that Plaintiff is experiencing a "progressive memory decline" and "is not like her previous self")). The Appeals Council thus did not err in declining to consider this information. *See Smith v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 270, 285-86 (W.D.N.Y. 2018) (Appeals Council did not err in declining to consider medical source statement that "[did] not indicate that it [was] meant to provide a retrospective assessment of Plaintiff's functioning" or "clearly refer to the relevant period of disability"). The Court finds no basis for remand in the Appeals Council's consideration of Dr. Raby's assessment.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 13) is denied. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 29, 2020
Rochester, New York